DECISION
{¶ 1} Plaintiff-appellant, Virgil Macklin, appeals from the judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("DRC").
{¶ 2} Appellant alleged that DRC was negligent in connection with two unrelated incidents that occurred while appellant was incarcerated. The first incident occurred at the Marion Correctional Institute on October 10, 1997, when appellant tripped over an orange plastic cone in the cafeteria dishwashing area. The second incident occurred at the Ohio State Penitentiary on September 27, 1999, when appellant tripped and fell in the shower. In lieu of a transcript, appellant has provided this court with a statement of evidence, pursuant to App.R. 9(C). According to the App.R. 9(C) statement, the following evidence was offered at trial.
{¶ 3} The first incident occurred in 1997, when appellant was incarcerated at the Marion Correctional Institute ("MCI"). In October 1997, appellant worked in the MCI cafeteria. Appellant testified that there was an orange plastic cone on the floor near the dishwashing machine. He stated that the cone was approximately ten to twelve inches high, and it had the words "wet floor" written on it. Appellant stated that he had seen the cone in the same location for the entire eight-to-ten-day period that he had worked in the cafeteria prior to October 10, 1997.
{¶ 4} Appellant testified that he got to the cafeteria at 11:00 a.m. on October 10, 1997, so that he could eat lunch before the general population of inmates arrived. After he finished his meal, appellant collected his items and walked to the dish room. He testified that the floor was dry. While he was walking to the sink, appellant noticed the orange cone in its usual position, although he did not pay particular attention to the cone. Appellant testified that, when he turned to leave the kitchen, he tripped over the cone and fell to the floor, injuring his neck, back and right knee. He stated that he had thought that if he kicked the cone it would simply move out of his way, although when his foot made contact with the cone, the cone did not move. After he fell, he discovered that the cone had concealed a drainage pipe that protruded approximately four inches above the tile floor. Appellant testified that Sergeant Gary Heaberlin called a nurse, and both Heaberlin and the nurse told appellant that they had also fallen over the cone.
{¶ 5} Sergeant Heaberlin testified that, although he worked in the MCI kitchen area, he did not work on October 10, 1997. He provided a copy of his work schedule, which confirmed that he did not work on October 10, 1997. He denied that he had ever tripped over the cone or that he had ever told an inmate that he had tripped over the cone. Heaberlin testified that the drainage pipe was part of the original kitchen design. He stated that he had observed the wheels of a tray cart catch on the pipe at some time prior to October 10, 1997. Heaberlin testified that he was told to place an orange cone over the pipe so that carts would not catch on the pipe.
{¶ 6} Robin Robinette, a nurse at the facility, testified that she responded to the scene after appellant fell. She testified that she had never fallen over the cone and she did not tell appellant that she had fallen over the cone.
{¶ 7} James Washington, another MCI inmate, testified that no one ever told him what was under the orange cone but that, after appellant's fall, he discovered that the cone concealed a pipe with a cap. He testified that the pipe was two to three inches in height with a three-quarter inch nut on top.
{¶ 8} The second incident occurred in 1999, when appellant, an inmate at the Ohio State Penitentiary ("OSP") in Youngstown, slipped in the shower area.
{¶ 9} According to Corrections Officer Kenneth Wayne Hayes, the showers at OSP are divided into individual stainless steel stalls with a drain in the center of the floor. A stainless steel lip, approximately three to six inches tall, surrounds each stall to contain the water. Outside each stall is an area of painted concrete with a gritty surface and an additional floor drain. The shower stall is elevated approximately eight inches above the concrete area. Hayes testified that there are no shower curtains, grab bars or mats in the showers at OSP, a high-maximum security facility, because of the need for visibility and to prevent inmate suicide. He testified that as many as eight inmates used the shower on a daily basis and that he allowed a porter to clean the showers five to seven times per week. Hayes acknowledged that water and soap residue collected on the stainless steel and concrete floors. He testified that he received complaints approximately two times per week about the condition of the showers, but he knew of no one who had fallen prior to appellant's fall.
{¶ 10} Appellant testified that, on September 27, 1999, he was placed in the shower by two corrections officers. According to appellant, the shower was filthy and he saw dirt and pieces of soap on the shower floor. He testified that, after he finished his shower and attempted to exit the stall, his toe got caught on the stainless steel lip and he slipped and fell on the floor outside the stall. Appellant testified that the floor outside the stall was wet, dirty and slick. He stated that he hurt his knee and ankle, aggravated a pre-existing back injury, and suffered pain as a result of the fall. Appellant admitted that he did not complain to the officers before he took the shower on the date at issue, nor did he refuse to take a shower because of the conditions. He admitted that there were no lighting problems in the shower area.
{¶ 11} Michael Ledger, an OSP inmate in September 1999, testified that he was the only porter for the showers in his unit, and the OSP officers let him out of his cell approximately once every ten to fourteen days to clean the showers. Ledger stated that he informed the corrections officers that the showers were filthy. Inmates Harry Briscoe and Darnell Howard, who were housed in the same unit as appellant in September 1999, testified that the showers were dirty, with dirt and soap accumulated on the floors. They both testified that they heard a loud noise in the shower area on September 27, 1999.
{¶ 12} By its decision rendered on February 9, 2001, the trial court concluded that (1) DRC was not negligent with regard to either incident, and (2) even if DRC had been negligent, appellant's contributory negligence outweighed any negligence on the part of DRC.
{¶ 13} Appellant now assigns the following errors:
{¶ 14} "ASSIGNMENT OF ERROR NO. 1:
{¶ 15} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING DEFENDANTS-APPELLEES WERE NOT NEGLIGENT IN FAILING TO MAINTAIN THE SHOWERS, PROVIDE SAFETY MATS, GRAB BARS, SHOWER CURTAINS TO KEEP THE FLOOR DRY AND REGULARLY CLEANING THE FLOORS AND WALLS OF THE SHOWER TO KEEP WATER AND DEBRIS OFF THE FLOOR WHERE THE INMATES STEPPED AFTER SHOWERING.
{¶ 16} "ASSIGNMENT OF ERROR NO. 2:
{¶ 17} "THE TRIAL COURT'S DECISION FINDING PLAINTIFF-APPELLANT GUILTY OF NEGLIGENCE IN ALIGHTING FROM THE SHOWER IS NOT SUPPORTED BY THE EVIDENCE AND IS AGAINST THE WEIGHT OF THE EVIDENCE, AS WELL AS THE COURT'S DECISION DENYING LIABILITY.
{¶ 18} "ASSIGNMENT OF ERROR NO. 3:
{¶ 19} "THE TRIAL COURT ERRED IN DENYING LIABILITY AS TO PLAINTIFF-APPELLANT'S FALL OVER A NEGLIGENTLY CONCEALED PROTRUDING PIPE, THE JUDGMENT AS TO NEGLIGENCE AND COMPARATIVE NEGLIGENCE NOT BEING SUPPORTED BY THE EVIDENCE AND IS AGAINST THE WEIGHT OF THE EVIDENCE."
{¶ 20} The appropriate standard of review is whether the decision of the trial court is contrary to law. We will not disturb the trial court's judgment if it is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. "`If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.'" Estate of Barbieri v. Evans (1998),127 Ohio App.3d 207, 211.
{¶ 21} To succeed in an action for negligence, a plaintiff must show the existence of a duty of care, a breach of the duty and an injury to the plaintiff, which was proximately caused by the breach. Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. In the context of a custodial relationship between the state and its prisoners, the state owes a common law duty of reasonable care and protection from unreasonable risks. McCoy v. Engle (1987), 42 Ohio App.3d 204, 207. Although the state is not an insurer of the safety of its prisoners, once it becomes aware of a dangerous condition in the prison it is required to take the reasonable care necessary to make certain that the prisoner is not injured. Clemets v. Heston (1985), 20 Ohio App.3d 132, 136. Reasonable care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. Woods v. Ohio Dept. of Rehab. Corr. (1998), 130 Ohio App.3d 742, 745. A plaintiff is also required to use reasonable care to ensure his own safety. See Perry v. Eastgreen Realty Co. (1977), 55 Ohio App.2d 130,132.
{¶ 22} We consider simultaneously appellant's first and second assignments of error, which both pertain to the trial court's judgment in appellee's favor with regard to the incident in the OSP shower. We conclude that there is competent, credible evidence to support the trial court's judgment. Although competing evidence was offered regarding how often the showers were cleaned, the trial court was entitled to resolve conflicts in evidence in favor of appellee. Moreover, we conclude that there was evidence that appellant's fall was caused by his own failure to clear the lip of the shower stall as he was exiting the stall. Accordingly, the trial court could have found that appellant would have avoided injury had he exercised reasonable care for his own safety. We therefore overrule appellant's first and second assignments of error.
{¶ 23} By his third assignment of error, appellant contends that the trial court erred when it concluded that appellee was not liable for injuries sustained when appellant fell over the orange cone in the MCI kitchen. We agree.
{¶ 24} We concur with the trial court that appellee was aware that the exposed pipe posed a risk that inmates could trip and fall during the course of their duties in the kitchen. We do not agree, however, that appellee exercised reasonable care to prevent injury when it placed an orange cone marked "wet floor" over the pipe. The evidence demonstrates that the cone concealed the nature of the danger from the inmates, who did not know that there was a stationery object underneath. The placement and markings on the cone gave the impression that once the floor had dried, the hazard was abated. Accordingly, we conclude that appellee breached its duty of care. We further disagree that appellant's contributory negligence outweighed appellee's negligence, as we conclude that it was not unreasonable for appellant to assume that the wet floor cone would yield upon contact. Accordingly, we sustain appellant's third assignment of error and instruct the trial court, upon remand, to enter judgment in appellant's favor with regard to liability for injuries appellant sustained when he tripped over the orange cone.
{¶ 25} For the foregoing reasons, appellant's first and second assignments of error are overruled and appellant's third assignment of error is sustained. The judgment of the Ohio Court of Claims is affirmed with regard to the incident at the Youngstown OSP and reversed with regard to the incident at MCI, and the case is remanded for further proceedings.
Judgment affirmed in part and reversed in part; case remanded.
TYACK, P.J., and BRYANT, J., concur.