[Cite as *Whitmore v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-1409.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RICHARD WHITMORE

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2008-10366

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the London Correctional Institution (LCI) pursuant to R.C. 5120.16. This case arises out of three separate incidents at LCI. Plaintiff alleges that on January 9, 2008, and again on January 13, 2008, he fell from upper bunks and suffered injury as a result of defendant's refusal to honor a medically prescribed lower bunk assignment. Plaintiff also alleges that on May 12, 2008, corrections officers (COs) placed him in handcuffs while conducting a "shakedown" of his cell, but failed to remove the handcuffs upon returning him to his cell. Plaintiff alleges that the handcuffs were not removed until six hours later.

{¶ 3} In order for plaintiff to prevail upon his claims of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately

caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Ohio law imposes upon the state a duty of reasonable care and protection of its inmates. *McCoy v. Engle* (1987), 42 Ohio App.3d 204, 207-208. Reasonable care is defined as the degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. *Woods v. Ohio Dept. of Rehab. & Corr.* (1998), 130 Ohio App.3d 742, 745. The state is not an insurer of inmates' safety, however. *Moore v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 107, 112.

{¶ 4} On December 13, 2007, defendant's medical staff issued plaintiff a lower bunk restriction, effective for one year. (Plaintiff's Exhibit 1.) Plaintiff testified that he has had a number of such restrictions at various correctional institutions since entering defendant's custody. (Plaintiff's Exhibits 1, 2, 3.) According to plaintiff, he received such restrictions because he suffers from several maladies that make it difficult for him to climb into an upper bunk, including tears in the biceps of each arm.

{¶ 5} Plaintiff testified that he received the restriction at issue on December 13, 2007, and that institutional procedure requires defendant to forward such restriction to personnel in the "count office" in his housing unit so that plaintiff can be assigned to a lower bunk. However, plaintiff was not assigned to a lower bunk and he testified that on January 9, 2008, he fell while attempting to climb into an upper bunk whereupon he twisted his left leg and injured the back of his head in a fall. Plaintiff stated that the day after the fall he was assigned to a lower bunk and felt "ok" after a few days. Plaintiff admits that he never filed a complaint regarding his bunk assignment prior to his fall, but that he may have mentioned his restriction to a nurse during a December 28, 2007, medical appointment. On January 18, 2008, plaintiff initiated the grievance process by filing an informal complaint which culminated in a March 13, 2008 decision from the institutional inspector which states that "upon the count office receiving the restriction

you should have been moved to a bottom bunk. This issue has since been corrected." (Plaintiff's Exhibits 4, 6.)

**{¶ 6}** Plaintiff testified that, on January 13, 2008, four days after his initial fall, plaintiff testified that he was sent to the "segregation" unit for disciplinary reasons. According to plaintiff, he was placed in a cell with an inmate who already occupied the lower bunk. Plaintiff stated that when he informed a CO of his lower bunk restriction, the CO told him that the other inmate also had a lower bunk restriction and that if the two inmates could not "work it out," he was permitted to remove the mattress from the upper bunk and place it on the floor to sleep. Plaintiff testified that he did so, but that on January 22, 2008, it became very cold and he decided that he no longer wanted to sleep on the floor. Plaintiff stated that he placed the mattress back on the upper bunk and attempted to climb onto it, but fell and twisted his left knee as well as injuring his lower back. Plaintiff testified that a nurse came to the cell that night to examine him. (Plaintiff's Exhibit 16.)

**{¶ 7}** Regarding plaintiff's fall on January 9, 2008, although plaintiff did not inform the staff in his housing unit of his restriction, plaintiff's testimony regarding the process by which the restriction should have been forwarded to the unit staff combined with the institutional inspector's findings convinces the court that defendant's employees knew or should have known of plaintiff's medical restriction. Accordingly, such employees had an affirmative duty to honor the restriction and their failure to do so proximately caused plaintiff's injuries. Accordingly, it is recommended that judgment be rendered in favor of plaintiff with respect to the January 9, 2008 fall.

**{¶ 8}** However, with regard to plaintiff's January 22, 2008 fall, the court notes that plaintiff is required to exercise a reasonable degree of care to ensure his own safety. See *Rose v. Ohio Dept. of Rehab. & Corr.*, Franklin App. No. 04AP-1360, 2005-Ohio-3935, at ¶9. Upon moving into the segregation cell, plaintiff agreed to place his mattress on the floor in lieu of sleeping on the upper bunk. Plaintiff was fully aware of his own physical limitations, yet, when he decided that he no longer wanted to sleep on

the floor, he made no attempt to alert staff of his decision and voluntarily attempted to climb into the upper bunk. Therefore, the court finds that plaintiff's fall on January 22, 2008, and any resulting injuries are attributable to his failure to take steps to ensure his own safety. Accordingly, it is recommended that judgment be rendered in favor of defendant with respect to plaintiff's January 22, 2008 fall.

{¶ 9} Turning to the third claim, plaintiff testified that on May 12, 2008, at approximately 4:00 p.m., three COs came to his cell in the segregation unit to perform a "shakedown." Plaintiff stated that as part of the shakedown procedure, he and his cellmate were required to place their hands behind their back and through the "cuff port" in the cell door, at which time a CO placed handcuffs on their wrists. Plaintiff testified that after being handcuffed, he and his cellmate were removed from the cell while COs conducted the search. According to plaintiff, when the search was complete, he and his cellmate were returned to the cell, the cell door was closed and the cuff port was opened so that the handcuffs could be removed. Plaintiff stated that a CO removed the handcuffs from his cellmate but failed to remove the set that he was wearing. Plaintiff testified that despite repeated attempts, he was unable to get the attention of the COs as they moved on to shake down other cells in the unit.

{¶ 10} According to plaintiff, he sat on his bed for approximately two hours with his hands behind his back but then his cellmate helped him move his hands to the front of his body to make himself more comfortable. Plaintiff stated that soon thereafter CO Andrew Goodrich came to the cell to deliver the evening meal. Plaintiff testified that he showed Goodrich that he was still handcuffed, but that Goodrich ignored him. Plaintiff also testified that some time after the meal was served, Goodrich returned with a nurse to dispense his prescription medication. Plaintiff claims that he showed the nurse that he was still wearing handcuffs, but that he was again ignored. According to plaintiff, throughout the evening he made repeated attempts to call staff members' attention to the fact that he was still wearing handcuffs, but could not get anyone's attention.

{¶ 11} Plaintiff testified that at approximately 10:00 p.m., as "second shift" was ending, he noticed COs "scurrying around" looking for a missing set of handcuffs. Plaintiff claims that Goodrich then came to his cell and asked him if he had the missing handcuffs and plaintiff replied that he would only allow them to be removed by a "white shirt" or superior officer. Plaintiff stated that this prompted the arrival of approximately ten white shirts at which point the handcuffs were removed, he was interviewed regarding the incident and examined by a nurse.

{¶ 12} Goodrich testified that on May 12, 2008, he was working "second shift" from 2:00 p.m. to 10:00 p.m. in the segregation unit and that he, CO Roland Jewell, and CO Roberts performed a shakedown of plaintiff's cell around 4:00 p.m. Goodrich stated that he handcuffed both plaintiff and his cellmate prior to removing them from the cell, and that when the shakedown was completed, he removed the handcuffs from plaintiff's cellmate but forgot to remove the set from plaintiff. Goodrich further stated that he visited plaintiff's cell throughout the evening, including "making rounds" approximately every half hour, delivering "juice" and a tray of food, retrieving the tray, delivering medication, and that on none of these occasions did plaintiff inform him that he was still wearing the handcuffs. According to Goodrich, he did not observe the handcuffs on plaintiff at any time and that at one point during his rounds he noticed plaintiff quietly sitting on his bed reading a book.

{¶ 13} According to Goodrich, he did not become aware that plaintiff was still handcuffed until the end of his shift when he performed an inventory and noticed that a set of handcuffs was missing. Goodrich testified that he and a number of other COs began searching the unit and asking the inmates if they had the missing handcuffs. After plaintiff showed CO Johnson that he was still wearing handcuffs, Goodrich ordered plaintiff to the cuff port and removed the handcuffs. Goodrich testified that as a result of the incident, defendant fined him one day's pay for "losing tools" and transferred him out of the segregation unit.

{¶ 14} Jewell testified that he was working in a different area of the segregation unit on May 12, 2008, but that when he passed out juice in plaintiff's unit he did not notice plaintiff wearing handcuffs and that plaintiff never attempted to inform him of that fact.

{¶ 15} Based upon the testimony presented at trial, the court finds plaintiff's claim that he tried to call attention to himself several times during the evening is not credible. The court further finds that plaintiff purposefully hid his hands and the handcuffs from the view of staff during the evening of May 12, 2008. Therefore, the court finds that although Goodrich was negligent in failing to remove the handcuffs from plaintiff after returning him to his cell, any injury plaintiff may have suffered thereafter is attributable to his own failure to take steps to alert LCI staff that he was still wearing the handcuffs. Accordingly, it is recommended that judgment be rendered in favor of defendant on plaintiff's third claim.

{¶ 16} In sum, it is recommended that judgment be rendered in favor of plaintiff on his negligence claim arising out of the fall from his bunk on January 9, 2008, and in favor of defendant on his remaining claims.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____

MATTHEW C. RAMBO
Magistrate

cc:

Douglas R. Folkert
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

MR/cmd
Filed March 3, 2010
To S.C. reporter March 30, 2010