[Cite as *Strong v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-1845.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JIMMY STRONG

   Plaintiff

   v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS

   Defendant
    Case No. 2008-03165

Judge Clark B. Weaver Sr.

DECISION

{¶ 1}   Plaintiff brought this action alleging a claim of negligence.  The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2}   At all times relevant, plaintiff was an inmate in the custody and control of defendant at Chillicothe Correctional Institution (CCI) pursuant to R.C. 5120.16.  Plaintiff testified that on November 1, 2004, he and another inmate, Phillip Elliott, were assigned to work at the CCI "welding shop."  Elliott had been designated a "lead man" in the shop where he helped direct other less-experienced inmates.  George Gallion, the shop supervisor, had ordered Elliott to unload a shipment of dump truck beds and Elliott directed plaintiff to operate an overhead crane to assist him.

{¶ 3}   After plaintiff had used the crane to place one of the truck beds into a service bay, he hooked chains from the crane to the truck's tailgate to remove it from the bed.  Plaintiff then operated the crane to lift the bed approximately one foot above the floor while Elliott worked to disconnect the hinges and latches that secured the

tailgate to the truck. Plaintiff testified that while the truck was suspended above the shop floor, the truck bed suddenly dropped as the tailgate swung away from the truck and struck him in the chest, causing serious injuries.

{¶ 4} Tony Fultz, the industry manager for CCI's vehicle modification center, testified that he arrived at the welding shop soon after the incident and found plaintiff lying on the floor. Fultz noticed that the chains were attached below "the hinge point" of the tailgate; a configuration he considered to be unsafe.

{¶ 5} On the day of the incident, Gallion interviewed witnesses and drafted three administrative reports. First, Gallion completed an "Inmate Accident Report" which included a signed statement by Elliott that attributed the accident to plaintiff's failure to follow Elliott's direction to attach the crane hook onto the bed of the truck. (Defendant's Exhibit K.) In his report, Gallion concluded that the cause of the accident was "a hazardous arrangement" and "improper starting or stopping of the crane and moving of the truck bed." Second, Gallion completed an incident report wherein he stated that "eyewitnesses" confirmed that the incident occurred while plaintiff was attempting to lift the truck bed "with the tailgate chain instead of the bed hooks." (Defendant's Exhibit N.) Finally, Gallion issued a conduct report charging plaintiff with violations of shop procedures and institution rules. (Defendant's Exhibit M.) According to Gallion, Elliott had previously advised plaintiff that the method he had used to hook and lift the tailgate was "an unsafe practice." Plaintiff acknowledged that defendant's Rules Infraction Board determined that he had failed to follow proper procedures and, as a result, his assignment to the welding shop was terminated.

{¶ 6} Plaintiff testified that Elliott directed him to attach the chains to the tailgate and to lift the tailgate with the crane. Plaintiff stated that once the rear of the truck bed was suspended, he was unable to observe which components Elliott was working on and he was unaware that Elliott intended to completely disconnect the tailgate before plaintiff had an opportunity to lower the truck to the floor. Plaintiff testified that he complied with Elliott's order to hook the chain to the tailgate so that he would not be reassigned or disciplined for failing to follow orders. Elliott testified that he directed plaintiff to hook the chains onto the bed of the truck, rather than the tailgate, and that he

believed plaintiff had complied with his instructions when he began to release the "air lock" mechanism on the tailgate.

{¶ 7} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Defendant owed plaintiff the common law duty of reasonable care. *Justice v. Rose* (1957), 102 Ohio App. 482. Reasonable care is that which would be utilized by an ordinarily prudent person under similar circumstances. *Murphy v. Ohio Dept. of Rehab. &* Corr., Franklin App. No. 02AP-132, 2002-Ohio-5170, ¶13. A duty arises when a risk is reasonably foreseeable. *Menifee,* supra, at 75.

{¶ 8} While the court is cognizant of a "special relationship" between an inmate and his custodian, no higher standard of care is derived from the relationship. *Clemets v. Heston* (1985), 20 Ohio App.3d 132. The state is not an insurer of the safety of its prisoners; however, once it becomes aware of a dangerous condition in the prison, it is required to take the degree of reasonable care necessary to protect the prisoner from harm. Id. "[W]here a prisoner also performs labor for the state, the duty owed by the state must be defined in the context of those additional factors which characterize the particular work performed." *McCoy v. Engle* (1987), 42 Ohio App.3d 204, 208. The state therefore has a duty to protect inmates from unreasonable risks of harm arising out of the performance of such labor. Id.

{¶ 9} With regard to training, Gallion testified that, in December 2001, he had personally instructed plaintiff regarding proper operation of the crane. (Defendant's Exhibit D.) According to plaintiff's shop record, he had also received on-the-job training and he had passed a test which qualified him to operate the overhead crane. (Defendant's Exhibit E.) Plaintiff acknowledged that he had received both operational and safety training and he recalled having passed a written test before he was approved to operate the crane. Plaintiff testified that he had operated the crane on a daily basis prior to the incident.

{¶ 10} Regarding the operation of the crane, plaintiff testified that a control box was used to direct the movement of the equipment. Plaintiff explained that the length of

the cord on the control box required him to remain within approximately four feet of the truck bed while the crane was operating; however, the evidence showed that once the crane had been placed in position, the operator did not have to remain at the controls to maintain that position. Plaintiff testified that he was standing directly in front of the tailgate when it struck him. Steven Brooks, the Health and Safety Coordinator for CCI, conducted an investigation and issued an incident report wherein he concluded that "the tailgate was lifted from the wrong location and [plaintiff] was standing in front of the tailgate instead of off to one side." (Defendant's Exhibit I.) Both Gallion and Fultz explained that attaching a crane to any surface below "a pivot point," such as a hinge, is an unsafe practice and that defendant's training emphasized the danger of such practices.

{¶ 11} Based upon the testimony and evidence adduced at trial, the court is not persuaded that plaintiff was ordered to attach the crane to the tailgate. Plaintiff's testimony lacked credibility and the testimony of defendant's witnesses was consistent and credible. Although plaintiff testified that he complied with Elliott's order to avoid being disciplined, Elliott, Gallion, and Fultz each testified that it was common knowledge in the welding shop that inmates, including those who had been designated lead man, could not impose discipline. According to Gallion and Fultz, inmate workers were encouraged to report any safety-related concern to a shop supervisor.

{¶ 12} The court finds that Elliott's testimony regarding the configuration of the chains was particularly credible in light of the fact that he had been working beneath the suspended truck bed just before the accident occurred. Specifically, the court does not find it plausible that Elliott would have ordered plaintiff to attach the crane to the tailgate inasmuch as unfastening the tailgate while the truck bed was suspended subjected Elliott to an obvious risk of serious injury.

{¶ 13} Based upon the foregoing, the court finds that plaintiff failed to prove that defendant committed a breach of its duty to provide adequate operational and safety training for the crane. The court further finds that plaintiff's own negligence in failing to properly operate the overhead crane in disregard for his own safety was the sole proximate cause of his injuries. Accordingly, judgment shall be rendered in favor of defendant.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JIMMY STRONG

      Plaintiff

      v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS

      Defendant
      Case No. 2008-03165

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

      This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Paige J. McMahon
Thomas M. Spetnagel
42 East Fifth Street
Chillicothe, Ohio 45601

Stephanie D. Pestello-Sharf
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

AMR/cmd
Filed March 16, 2011
To S.C. reporter April 12, 2011