[Cite as *Howard v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-684.]

| ROBERT K. HOWARD | Case No. 2014-00950 |
| --- | --- |
| Plaintiff | Magistrate Gary Peterson |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} As an initial matter, at the outset of proceedings, the magistrate GRANTED defendant's October 15, 2015 motion to quash the subpoena issued to Doctor Kidd.

{¶3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Richland Correctional Institution (RCI). This case arises out of an incident in which plaintiff slipped and fell on an accumulation of snow and ice on a walkway at RCI.

{¶4} Plaintiff, who is a diabetic, testified that on the morning of March 21, 2014, he awoke at approximately 5:30 a.m., and prepared to proceed to inmate health services (IHS) to get his blood checked by an Accu-Chek monitor. IHS is located in a different building than plaintiff's cell block. Plaintiff estimated that it takes him about two minutes to walk from his cell block to IHS. Plaintiff testified that all inmates are required to use one particular walkway to travel between the cell block and IHS. Plaintiff believed that the walkway, which was made of concrete, was approximately 12 feet wide.

{¶5} Plaintiff reports that inmates are called by cell block to proceed to IHS. Plaintiff testified that after receiving such a call at about 6:50 a.m., he, along with a

group of inmates from his cell block, proceeded toward IHS on the assigned walkway. According to plaintiff, it had been intermittently snowing the preceding week and it had snowed either late the night before or early that morning, covering the walkway. Plaintiff relates that the walkway between the cell block and IHS had been salted in the days preceding March 21, but it had not been salted that morning. Plaintiff testified that due to the accumulation of snow over the preceding week, the walkway was more narrow than normal. Plaintiff testified that he proceeded approximately 20 yards along the walkway from his cell block to IHS when he stepped on a patch of ice, slipped and fell to the ground striking his ankle, right hip, back shoulder and head. Plaintiff remained on the ground until he was transported to IHS. Plaintiff reports that his ankle was "crushed," requiring steel plates, bolts and rods to surgically repair the damage.

{¶6} Inmate James Day, who is a diabetic, testified that on March 21, 2014, at 6:45 a.m., he was proceeding to IHS. Day reported that plaintiff was walking to IHS with the aid of a cane and had his arm in a sling. Day, who has been at RCI since 2005, testified that plaintiff slipped on a "bad spot" on the walkway where "black ice" had formed. According to Day, the walkway had not been salted that morning. Day testified that the spot where plaintiff fell has been a "bad spot" the entire time that he has been at RCI and that he has also previously fallen in the same spot. Day described the spot as a depression in the ground. According to Day, the area where plaintiff fell is "swampy" during the wintertime.

{¶7} Kerry Cramer, the maintenance superintendent at RCI, testified that he has worked at RCI the entire time it has been open. Cramer testified that he supervises a staff of 12 employees within his department and that the maintenance staff is responsible for all the maintenance in the institution. Such maintenance includes plumbing, carpentry, welding, snow removal, general grounds keeping, and grass mowing. Cramer testified that in March 2014, RCI had a policy in place regarding snow and ice removal. Cramer explained that pursuant to the policy, during the hours of

7:00 a.m. and 3:00 p.m., the maintenance department is responsible for snow and ice removal on the walkways. Cramer reported that rock salt is used on asphalt surfaces and calcium chloride is used on concrete walkways. Cramer testified that only defendant's maintenance staff employees are allowed to spread rock salt or calcium chloride. According to Cramer, after 3:00 p.m. and before 7:00 a.m., the captain's office makes the decision whether to call maintenance staff to come in and perform snow and ice removal. Cramer explained that such a call typically occurs when there has been snowfall exceeding one to two inches. Cramer testified that no one was directed to perform any snow or ice removal prior to 7:00 a.m. on March 21, 2014.

{¶8} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused him injury. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶9} In general, a possessor of land has no duty to protect an invitee from natural accumulations of ice and snow on his property. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). Implicit in this rule is the rationale that such accumulations are so open and obvious that invitees can be expected to protect themselves from the danger they present. *Dean v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 97API12-1614, 1998 Ohio App. LEXIS 4451 (Sept. 24, 1998). Essentially, "an invitee who chooses to traverse a natural accumulation of ice or snow is generally presumed to have assumed the risk of his or her action to the degree that no duty exists on the premises owner." *Id*. However, inmates incarcerated in a state penal institution are not afforded the status of a traditional "invitee" and are not always free, as an invitee would be, to refrain from traversing the accumulation of ice and snow and so they cannot be said to assume the risk of doing so. *Id*; *see also May v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 00AP-1327, 2001 Ohio App. LEXIS 2859 (recognizing that an inmate who slipped

and fell on a natural accumulation of ice or snow had no opportunity to refrain from using the assigned path); *Gerald Fields v. Ohio Dept. of Rehab. & Corr*, Ct. of Cl. No. 2010-12281 (June 7, 2012). Rather, in the context of the custodial relationship between the state and its inmates, the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know. *Moore v. Ohio Dept. of Rehab. & Corr.*, 89 Ohio App.3d 107, 112 (10th Dist.1993); *McCoy v. Engle*, 42 Ohio App.3d 204, 207-208 (10th Dist.1987); *Dean, supra*.

{¶10} With regard to notice, "[n]otice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Jenkins v. Ohio Dept. of Rehab & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 12; *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14. "To support an inference of constructive notice, a plaintiff may submit evidence that the condition existed for such a length of time that the owner or its agent's failure to warn against it or remove it resulted from their failure to exercise ordinary care." *Jenkins* at ¶ 12.

{¶11} The evidence adduced at trial establishes that plaintiff suffers from diabetes. Additionally, on March 21, 2014, plaintiff ambulated with the aid of a cane and had his arm in a sling. The evidence establishes that it was necessary for plaintiff to visit IHS at approximately 6:45 a.m., to get his blood checked with an Accu-Chek monitor. The magistrate finds that when plaintiff exited his cell block to visit IHS, there was a small accumulation of snow on the walkway that he was required to use.

Additionally, the magistrate finds that approximately 20 yards away from the cell block, plaintiff encountered a depression in the walkway that was filled or covered with ice. The walkway had not been treated for snow and ice removal that morning. In light of both the accumulated snowfall and the ice in the depression in the walkway, the magistrate finds that traversing the ice-covered depression in the walkway posed an unreasonable risk of harm to plaintiff.

{¶12} Plaintiff did not present any evidence that defendant had actual notice of the dangerous condition of the walkway.  However, the magistrate finds that defendant had constructive notice of the dangerous condition of the walkway.  Indeed, it is uncontroverted that there is a depression in the walkway where plaintiff fell. Furthermore, such a depression has existed in the walkway since at least 2005.  The magistrate finds that inmate Day credibly testified that such a "bad spot" has existed the entire time he has been at RCI.  Moreover, inmate Day described the area as "swampy" during the wintertime.

{¶13} The magistrate finds that inasmuch as defendant should have been aware of the risk of harm to plaintiff but failed to take reasonable care to prevent him from becoming injured by the dangerous condition of the walkway, defendant breached the duty of reasonable care it owed to plaintiff.  The magistrate further finds that this breach of duty proximately caused plaintiff to slip and fall on the ice-filled depression in the walkway and suffer bodily injury.

{¶14} For the foregoing reasons, the magistrate finds that plaintiff has proven his claim of negligence by a preponderance of the evidence.  Accordingly, it is recommended that judgment be rendered in favor of plaintiff.

{¶15} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first*

*objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

cc:

Robert K. Howard, #A235-537
Richland Correctional Institution
P.O. Box 8107
Mansfield, Ohio 44901

Timothy M. Miller
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed January 14, 2016**
**Sent to S.C. Reporter 2/25/16**