[Cite as *Barrett v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-3180.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BRANDON BARRETT

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2010-07831

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

DECISION

{¶ 1} On April 25, 2011, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). Plaintiff did not file a response. The motion is now before the court on a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor."  See also *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶ 4}  At all times relevant, plaintiff was an inmate in the custody and control of defendant at the London Correctional Institution (LoCI) pursuant to R.C. 5120.16.  Plaintiff alleges that on April 10, 2010, he slipped, fell, and was injured in the shower that adjoins his cell in the Special Management Housing unit (SMH) at LoCI.  Plaintiff asserts that his fall was due to the fact that the shower did not drain properly and was not equipped with safety devices such as safety mats and handrails.

{¶ 5}  In order for plaintiff to prevail upon his claims of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries.  *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77.

{¶ 6}  Under Ohio law, the duty owed by an owner or occupier of premises ordinarily depends on whether the injured person is an invitee, a licensee, or a trespasser.  *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 1996-Ohio-137.  However, an inmate incarcerated in a state penal institution is not afforded the status of any of the traditional classifications.  In the context of the custodial relationship between the state and its inmates, the state has a duty to exercise reasonable care to prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know.  *Moore v. Ohio Dept. of Rehab & Corr.* (1993), 89 Ohio App.3d 107, 112; *McCoy v. Engle* (1987), 42 Ohio App.3d 204.  The state is not the insurer of inmate safety, however.  See *Williams v. Ohio Dept. of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 699, at 702.

{¶ 7}  In support of its motion, defendant filed the affidavits of LoCI employees Michael Lain and Charles Hodge.  In his affidavit, Hodge states:

{¶ 8}  "1.  I have personal knowledge of and I am competent to testify to the facts contained in this Affidavit.

{¶ 9}  "2.  I am employed by [defendant] as a Correctional Officer at [LoCI] in London, Ohio.  I have worked as a correctional officer for [defendant] for one year.  Prior

to working as a correctional officer, I worked on the farm at LoCI as a correctional farm coordinator for five years.

**{¶ 10}** "3.   As a part of working as a correctional officer for [defendant], my duties and responsibilities include maintaining the safety and security of the institution and the individuals within it.  To carry out my duties as a correctional officer at LoCI, I am assigned to work certain posts within the institution.

**{¶ 11}** "4.   Although I have worked other posts within the institution, I generally am assigned to work as a correctional officer in the [SMH] segregation unit.  SMH is made up of three 'pods' or hallways lined with cells on either side.  Inmates housed in this unit have restricted privileges and remain in their cells for approximately 23 hours per day.

**{¶ 12}** "5.   When working this post, part of my duties include overseeing the inmates housed in this unit.  To do this, security checks are conducted to monitor the inmate.  When doing a security check, a correctional officer walks down each hallway of the unit and examines/looks into the window of each cell and each shower area.  The entire cell and shower area is visible through these windows.  Approximately one third of the cell door is a window that is at eye-level so that the inmates can easily be monitored by the guards.  There is a separate window that is also eye-level that looks into the shower area for inspection and monitoring.  If any issue or concern - including any maintenance concern - is observed, the correctional officer addresses and reports the matter.  If a clogged/malfunctioning shower drain is reported or observed, the issue is reported to the maintenance department.

**{¶ 13}** "6.   The inmates housed in the segregation unit are served their meals in their cells, rather than reporting to the cafeteria to eat.  After the inmates' meals are delivered to the segregation unit, the correctional officers assigned to that area serve the trays to the inmates.  To do this, a correctional officer assigned to the area approaches the cell window and then slides the tray into the food hatch/cuff port that is directly below the window.

**{¶ 14}** "7.   On April 10, 2010, I worked the second shift in SMH, the segregation unit. On this date, [plaintiff] was housed within SMH in B-Pod cell number 34.  Security checks of this cell, as well as with the other cells in the unit, were conducted at: 2:04

p.m., 2:15 p.m., 2:41 p.m., 3:06 p.m., 4:01 p.m., 4:26 p.m., 4:42 p.m., 5:32 p.m., and 5:48 p.m. Then at 6:15 p.m., the inmates housed in B-Pod, including plaintiff, were served their meals. At each of these times, a correctional officer examined the inmates' cells through the cell door window and through the shower window. To protect my safety as well as the other individuals in the institution, I am constantly being observant of issues or concerns with inmates' cells.

{¶ 15} "8. Then, at 6:47 p.m. on said date, I walked down the B-Pod to pick up dinner trays when [plaintiff's] cellmate started kicking the door and yelling for a correctional officer. I went to this cell and he pointed at [plaintiff] who way lying on the floor by his shower. Upon seeing him on the floor, I immediately called for medical assistance.

{¶ 16} "9. I observed the shower area where [plaintiff] was lying on the ground and no standing water was present. The drain did not appear to be clogged in any way. If the drain had been malfunctioning or * * * clogged, I would have reported the condition to maintenance. Further, at no time prior to [plaintiff's] incident was a malfunction or issue with the drain observed. Additionally, no other issues/equipment malfunctions of any sort in the shower area were observed.

{¶ 17} "10. During my time as a correctional officer, I have never experienced the drain/showers in the segregation unit malfunctioning. Given the setup of the cell area, if the drain was clogged, the water would have spilled out of the cell into the hallway."

{¶ 18} Lain states:

{¶ 19} "1. I have personal knowledge of and I am competent to testify to the facts contained in this Affidavit.

{¶ 20} "2. I am employed by [defendant] as the Building Maintenance Superintendent at [LCI] in London, Ohio. I have held this position since 1989. I have been employed by [defendant] since 1981.

{¶ 21} "3. As part of my duties and responsibilities as the Building Maintenance Superintendent, I oversee the maintenance department at LoCI. I ensure that maintenance issues are addressed timely.

{¶ 22} "4. In addition, as part of my duties and responsibilities, I maintain records that document when all complaints relating to maintenance concerns are received as well as the work orders issued. A review of the records and work orders from January 1, 2010 through April 10, 2010, show that no complaints were received nor were any work orders submitted relating to cell shower drainage issues anywhere in the [SMH], often referred to as the segregation unit, at LoCI. If a complaint or work order was received, it would have been recorded."

{¶ 23} Civ.R. 56(E) provides in pertinent part:

{¶ 24} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 25} Plaintiff has failed to provide the court with an affidavit or other evidence showing that there is a genuine issue for trial.

{¶ 26} Based upon the undisputed affidavit testimony provided by defendant, the only reasonable conclusion to be drawn from the evidence is that there was no drain clog or other malfunction in plaintiff's shower that caused an unsafe condition. Plaintiff has not shown that defendant was under any legal obligation to install grab bars or place shower mats in the shower in question. Accordingly, defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

## Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BRANDON BARRETT

     Plaintiff

     v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

     Defendant
     Case No. 2010-07831

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

<u>JUDGMENT ENTRY</u>

A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Emily M. Simmons
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Brandon Barrett, #617-347
London Correctional Institution
P.O. Box 69
London, Ohio 43140

MR/cmd
Filed June 13, 2011
To S.C. reporter June 22, 2011