McCOY, APPELLANT, *v.* ENGLE, SUPT., ET AL. APPELLEES.

(No. 87AP-489—Decided
September 15, 1987.)

*Livorno & Arnett* and *John F. Livorno,* for appellant.

Anthony J. Celebrezze, Jr., attorney general, and *Mark T. D'Alessandro,* for appellees.

STRAUSBAUGH, P.J. This is an appeal by plaintiff from a judgment of the Court of Claims dismissing his suit for negligence. Judgment was entered by the claims court following remand from this court.

This cause was initiated in the Court of Claims on October 3, 1980 by plaintiff, Russell McCoy, for injuries sustained while plaintiff was incarcerated by defendant, Ohio Department of Rehabilitation and Correction. The accident occurred while plaintiff was working on the prison farm located at Chillicothe Correctional Institute. At the time of the incident, plaintiff and another inmate were operating a "collar," a device used to restrain a bull while undergoing castration. Apparently, plaintiff was injured when the other inmate failed to collar his bull, thus allowing the bull to run in to the area where plaintiff stood. The bull butted plaintiff causing injury to his right bicep muscle.

The Court of Claims rendered judgment in plaintiff's favor on August 6, 1985 in the amount of $18,000. The claims court found that although plaintiff was an inmate he was also an "employee" for purposes of R.C. 4101.01 (D). As such, the Court of Claims further found that defendant violated R.C. 4101.12, which imposes a duty on an employer to furnish a safe place of employment.

Defendant appealed to this court. We reversed the judgment of the Court of Claims and remanded. *McCoy v. Ohio Dept. of Rehabilitation & Correction* (1986), 31 Ohio App. 3d 228, 31 OBR 511, 511 N.E. 2d 398. Reversal was had for the reason that although plaintiff's status as a prisoner did not preclude a finding that he was an "employee" for purposes of R.C. Chapter 4101, the evidence did not support such a finding. Therefore, since the claims court predicated its finding of negligence upon breach of a statutory duty, and made no finding with respect to the existence of a common-law duty, the cause was remanded to that court for further proceedings in accordance with law consistent with the opinion.

Upon remand, the Court of Claims found that plaintiff failed to establish by a preponderance of the evidence that defendant was negligent. The court further found that there was no evidence to indicate that the method used by the state in restraining the animals and castrating them showed negligence on the part of state employees. The claims court noted that, despite the appellate finding of evidence from which the trial court could have found defendant negligent, in fact plaintiff presented no testimony upon which such an assumption could be premised.

On appeal plaintiff assigns four errors for review:

"1. The Court of Claims erred in redeciding the factual evidence when it was directed by the Court of Appeals upon remand to decide the matter in 'accordance with law.'

"2. The Court erred in applying the test of negligence as it applies to the owners of domestic animals rather than applying the common law negligence test as defined in *McAffe* v. *Overberg* (1977), 51 Ohio Misc. 86.

"3. The Court of Claims erred in

finding that '[t]here was no testimony presented by the plaintiff that would indicate that the process used was in any way insufficient to protect the persons conducting the process from being injured.'

"4. The decision of the Court of Claims is against the manifest weight of the evidence."

Essentially, plaintiff raises three issues. First, since the cause was remanded from this court to the claims court solely for the purpose of proceedings "in accordance with law consistent with the opinion," the court below erred when it reconsidered the evidence and made new factual findings. Second, the court erroneously applied the negligence standard set forth in *Drew* v. *Gross* (1925), 112 Ohio St. 485, 147 N.E. 757, rather than the common-law standard of negligence. Finally, plaintiff maintains that even if the court properly applied the correct standard, its judgment is nevertheless unsupported by sufficient evidence and is against the manifest weight of the evidence.

In response to plaintiff's first assigned error, we start by noting that generally a decision of a reviewing court is binding on a lower court upon remand. See *Nolan* v. *Nolan* (1984), 11 Ohio St. 3d 1, 11 OBR 1, 462 N.E. 2d 410. The doctrine from which this general principle flows is commonly known as "the law of the case." *Id.* Moreover, the doctrine extends to all issues previously decided as finally settled. *Blackwell* v. *Internatl. Union, U.A.W.* (1984), 21 Ohio App. 3d 110, 21 OBR 117, 487 N.E. 2d 334. However, the law of the case obtains only as of that point in the trial where an error complained of upon appeal is alleged to have occurred. *State, ex rel. Stevenson,* v. *Murray* (1982), 69 Ohio St. 2d 112, 113, 23 O.O. 3d 160, 431 N.E. 2d 324, 325; *Commrs. of Montgomery Cty.* v. *Carey* (1853), 1 Ohio St. 463. As such,

it is commonly held that a lower court is free to change factual findings previously made by that court as to issues not passed upon by the reviewing court. *Beltran* v. *Myers* (C.A.9, 1983), 701 F. 2d 91, certiorari denied (1983), 462 U.S. 1134; *Western States Machine Co.* v. *S. S. Hepworth Co.* (C.A.2, 1945), 152 F. 2d 79; *Hulihee* v. *Heirs of Hueu (K)* (1976), 57 Hawaii 387, 556 P. 2d 920; *Long* v. *George* (1937), 296 Mass. 574, 7 N.E. 2d 149.

Here, the court of appeals reversed the judgment of the claims court in the previous appeal insofar as the court relied upon R.C. Chapter 4101 as creating the standard of care for defendant. The cause was remanded for further proceedings as to the issue of defendant's negligence under common-law principles.

Upon review of the transcript and decision rendered in the prior trial, we believe the court below could, under proper circumstances, make factual findings that differed from those made in the initial proceeding. The trial transcript reveals that the court adduced evidence on the feasibility of constructing additional safety devices because of a *statutory* duty which required employers to maintain a safe place for employees to work. That this finding is premised on a duty arising from statute is further reinforced by the factual finding of the court that the "physical arrangement of the chute area created a dangerous condition in which the plaintiff was *engaged in his work activity.*" (Emphasis added.) As such, the claims court was free to disregard the prior conclusion that a dangerous condition existed since that conclusion was premised on a statutory duty of care. Accordingly, plaintiff's first assignment of error is not well-taken and is overruled.

Plaintiff next asserts that the court applied an improper standard of negligence to the facts of this cause.

For the reasons which follow, we find plaintiff's argument well-taken.

At issue is the standard of care owed by the state to an inmate who works with state-owned livestock. The issue, narrowly framed, admits of several general observations regarding standards of care under negligence principles. First, and foremost, it must be recalled that whether one is negligent does not turn solely on whether the actor's conduct conformed to some particular standard. Rather, the focus of negligence is whether the actor's conduct involved an unreasonable risk of harm to the injured party. See *Sams* v. *Englewood Ready-Mix Corp.* (1969), 22 Ohio App. 2d 168, 51 O.O. 2d 315, 259 N.E. 2d 507; see, generally, Prosser & Keeton, Torts (5 Ed. 1984) 169-173, Section 31, and 2 Restatement of the Law 2d, Torts (1965) 9, Section 282.

Correlative with this first negligence principle regarding the standard of care is the concept of duty. Absent a duty to act reasonably toward the injured party, no negligence may be claimed. *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125, 127, 47 O.O. 2d 282, 283, 247 N.E. 2d 732, 733-734; *Pittsburgh, Ft. Wayne & Chicago Ry. Co.* v. *Bingham* (1876), 29 Ohio St. 364; see, generally, Prosser & Keeton, *supra,* at 356, Section 53; 2 Restatement of the Law 2d, Torts (1965) 4, Section 281(b). Although the terms "duty" and "due care" may be conceptually distinct, both are interrelated such that one cannot be defined in a particular context without defining the other. Prosser & Keeton, *supra,* at 356, Section 53.

We see, therefore, that the duty of care owed by one to another is a contextual term of relationship between the actor and the person claiming injury. As such, two inquiries are relevant. First, did the state owe plaintiff any duty of care? Second, assuming a duty is owing, what must the state do to satisfy the obligation? See Prosser & Keeton, *supra,* at 356, Section 53.

It is apparent, in regard to the first question, that the relationship of plaintiff to the state, under the facts of this cause, is of a dual nature. That is, the state operates both a farm and a prison. It is not sufficient to emphasize solely the agricultural aspects of this case to the exclusion of the fact that the farm is also a prison.

Clearly, there was no statutory duty of care imposed by law upon defendant at the time this cause accrued. It should be noted, however, that subsequent to the bringing of this suit, the General Assembly has amended and enacted R.C. 5145.03 and 5145.16 to 5145.162, which govern the employment of prisoners. Pursuant to those sections, defendant has promulgated certain rules regarding the hours and conditions of employment for prisoners. See, *e.g.,* Ohio Adm. Code 5120-3-03. As such, there may now be a statutory duty of care with which defendant must comply. However, that issue is not now before us and we therefore express no opinion in that respect.

Despite the absence at the time plaintiff was injured of a statutory duty, there was and is a common-law duty of due care owed by the state to its prisoners. *Fondern* v. *Dept. of Rehabilitation & Correction* (1977), 51 Ohio App. 2d 180, 183, 5 O.O. 3d 325, 327, 367 N.E. 2d 901, 903; see, also, *Jenkins* v. *Krieger* (1981), 67 Ohio St. 2d 314, 319, 21 O.O. 3d 198, 201, 423 N.E. 2d 856, 860 certiorari denied (1981), 454 U.S. 1124; *Clemets* v. *Heston* (1985), 20 Ohio App. 3d 132, 20 OBR 166, 485 N.E. 2d 287; *Justice* v. *Rose* (1957), 102 Ohio App. 482, 3 Ohio Law Abs. 39, 144 N.E. 2d 303; *McAfee* v. *Overberg* (1977), 51 Ohio Misc. 86, 5 O.O. 3d 345, 367 N.E. 2d 942. In the context of the custodial relationship

between the state and its prisoners, the state owes a duty of reasonable care and protection from unreasonable risks. *Clemets, supra,* at 135-136, 20 OBR at 169, 485 N.E. 2d at 291; 2 Restatement of the Law 2d, Torts (1965) 118, Section 314A(4).

Having established that the state owed plaintiff a general duty of care, it should also be remembered that the duty does not exist in the abstract. Thus, where a prisoner also performs labor for the state, the duty owed by the state must be defined in the context of those additional factors which characterize the particular work performed. Accordingly, we hold that the state was under a duty to protect plaintiff against those unreasonable risks of physical harm associated with the performance of his duties as a "farm hand."

At such, it is clear that the court below erred when it applied the rule of *Drew* v. *Gross, supra,* to the case at bar. The principle of *Drew* was derived from the common-law duty of owners of livestock to exercise care "not to let his livestock stray out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that if the livestock stray onto such a highway they are apt to damage persons and property." *Id.* at 491, 147 N.E. at 759.

Although the issue in *Drew* was similar to the issue here — whether defendant owed plaintiff a duty to erect a fence — the factors relied upon in that case are entirely different from those factors relevant here. The *Drew* court focused on the relationship an owner of livestock has to the public who travel roads which bound the owner's land. The precise factors which make a particular risk unreasonable as to the public at large are quite dissimilar from those factors which may render unreasonable the state's failure to protect plaintiff from harm. Relevant factors to the *Drew*

court were the nighttime period when the injury occurred, the much-traveled condition of the highway, the proximity of the field to the highway and the defective condition of the fence. Here, on the other hand, the relevant factors are the obligatory nature of plaintiff's labor, the dangerous propensity of the animals when frightened, the relative inexperience of the inmates in handling and collaring large animals, and the ease with which the risk could have been abated.

Based on the foregoing, plaintiff's second assignment of error is well-taken and is sustained.

Plaintiff, in his third and fourth assignments of error, asserts that the judgment of the claims court is contrary to the weight of the evidence and is unsupported by the evidence actually adduced at trial. We note, at the outset, that contrary to the statement of counsel at oral argument and by way of brief, there is a photograph of the chalkboard drawing made in court depicting the physical arrangement of the chutes and corral. As such, to the extent that the court relied on the layout of the livestock operation in reaching its conclusion, such reliance is consistent with the photograph. More importantly, however, we agree with plaintiff that the court's finding that there was no evidence upon which the court could premise a finding of negligence is unsupported by the record. This finding is in direct conflict with our previous opinion in this cause. *McCoy, supra,* at 231-232, 31 OBR at 514-515, 511 N.E. 2d at 402-403. There is in fact a plethora of testimony from which the court below could have found that the state could have utilized a process that would have afforded the chute operators greater protection from the risks associated with the process. Moreover, this testimony was elicited by the court itself. As such, the court's finding of no evidence is clearly erroneous and must be reversed as a

matter of law. Plaintiff's third assignment of error is, therefore, sustained.

However, merely because there is evidence that defendant could have employed a safer castration process is not dispositive of whether that fact, standing by itself, amounts to negligence. Inasmuch as we have previously indicated that the court employed an erroneous standard of care, it is necessary for us to consider whether the decision under that standard is contrary to the weight of the evidence. Accordingly, plaintiff's assignment of error is overruled as moot.

Therefore, plaintiff's first and fourth assignments of error are overruled, while plaintiff's second and third assignments of error are sustained. The judgment of the Court of Claims is reversed and the cause is remanded to that court for further proceedings consistent with this decision. Upon remand, the court should again review the evidence and determine whether plaintiff has established that defendant breached its common-law duty of care to protect plaintiff from those unreasonable risks of harm which attend the collaring and restraint of bulls undergoing castration.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

REILLY and MCCORMAC, JJ., concur.