OPINION
{¶ 1} Plaintiff-appellant, Mark McElfresh, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction, in plaintiff's negligence action to recover damages for an injury plaintiff sustained while helping dismantle a temporary wall located at Chillicothe Correctional Institution ("CCI") where plaintiff is an inmate. Plaintiff advances the following nine assignments of error:
ASSIGNMENT OF ERROR NO. 1:
The magistrate's and the trial court's finding in regard to the physical description, dimensions and action relating to the removal of channel and trim were in error and the findings were contrary to law.
ASSIGNMENT OF ERROR NO. 2:
The magistrate's and the trial court's finding and conclusion hard hats were not necessary is contrary to law.
ASSIGNMENT OF ERROR NO. 3:
The magistrate and trial judge erred when they concluded and found supervisor Rinehart adequately warned plaintiffappellant of the impending fall of the metal which struck plaintiff-appellant.
ASSIGNMENT OF ERROR NO. 4:
The magistrate and trial court erred when they ruled plaintiffappellant suffered minor injury since this was a liability only trial and the nature and extent of the injury was not explored.
ASSIGNMENT OF ERROR NO. 5:
The magistrate and trial court erred when they ruled supervisor Rinehart's experience eliminated the need for hard hats because he found them unnecessary.
ASSIGNMENT OF ERROR NO. 6:
The magistrate's and trial court's conclusion plaintiff-appellant had a duty to request a hard hat, if he felt endangered, was in error.
ASSIGNMENT OF ERROR NO. 7:
The magistrate and trial court erred in concluding and finding defendant-appellee did not violate the duty of ordinary care in not requiring plaintiff-appellant to wear a hard hat and in not clearing the area of workmen before removing the attached trim and channeling.
ASSIGNMENT OF ERROR NO. 8:
The magistrate and trial court erred in finding that other inmates' opinions as to the need for hard hats were relevant as to the duty to provide protective headgear while removing overhead metal, weighing as much as eight pounds.
ASSIGNMENT OF ERROR NO. 9:
The magistrate's and trial court's finding defendant-appellee was not negligent and plaintiff-appellant was negligent is against the manifest weight of the evidence.
 {¶ 2} On August 2, 2001, plaintiff instituted this action in the Ohio Court of Claims, alleging he sustained an injury after being struck in the head by a piece of fallen metal trim loosened in the course of dismantling a temporary wall. Plaintiff asserted defendant was negligent in failing to provide a safe working environment, i.e., in failing to provide him a hard hat to wear during the dismantling project and in failing to warn him of the danger of falling material. The case was tried to a magistrate on the issue of liability only. The evidence presented at trial is as follows.
 {¶ 3} On September 9, 2000, plaintiff was assigned to a carpentry shop work crew supervised by Erin R. Rinehart. At that time, plaintiff had been an inmate at CCI for four years and had worked in the carpentry shop for the past three years. Rinehart had been a carpentry shop supervisor at CCI since December 1996; prior to that, he was a CCI correction officer for 16 years.
 {¶ 4} Rinehart testified that he and his crew, consisting of plaintiff and two other inmates, were assigned to assist another crew in dismantling a temporary wall in the administration building. The temporary wall was constructed of panels made of sheet metal fastened by screws and clamps. The bottom panels were approximately six feet high and four feet wide. Smaller panels, between 18 and 24 inches wide, were placed on top of the bottom panels to reach the ceiling, which was eight feet high. The top panels were attached to the ceiling by four-foot sections of channeling which, when fastened together, ran the length of the room. Metal trim sections approximately four feet long and three inches wide were fastened between the panels to hide the seams. Rinehart estimated the trim sections each weighed approximately five pounds. Since the wall was approximately eight feet high, some of the work had to be performed overhead. Although hard hats were available in the carpentry shop, Rinehart determined it was unnecessary for crew members or supervisors to wear them for this particular project, given that all the overhead work was within arm's reach.
 {¶ 5} As Rinehart attempted to pry a section of the trim from overhead, he twice loudly warned plaintiff, who was standing nearby, to move out of the area. While Rinehart was holding one end of the trim, the other end came loose and struck plaintiff on top of his head. Rinehart briefly examined the injury and asked plaintiff if he wanted to go to the infirmary for treatment. Plaintiff declined the offer and resumed work after a few minutes. A few days later, Rinehart submitted a written report noting, among other things, that the trim that struck plaintiff had fallen only two feet and that plaintiff's injury consisted only of a small red spot and small bump. (Plaintiff's Exhibit 1.)
 {¶ 6} At trial, Rinehart described plaintiff's injury as a small red bump resembling a mosquito bite. He testified plaintiff had ample time to avoid being struck by the falling trim had he heeded Rinehart's warnings. He further testified he did not report the incident immediately after it occurred because a minor injury such as that received by plaintiff was a common occurrence among members of the carpentry crew. He further testified he did not include in his written report a statement indicating he warned plaintiff about the falling trim because the report was not intended to delineate specific details about the incident.
 {¶ 7} Plaintiff testified that as he cleaned debris off one section of the wall, he was hit in the head by a section of trim that had been pried loose by one of the other inmates who was standing on a ladder five or six feet from plaintiff. According to plaintiff, the impact knocked him to his knees. Plaintiff testified he went to the infirmary where he was checked for a concussion and his wound was cleaned. After receiving treatment, he returned to the carpentry shop but not to the job site.
 {¶ 8} Plaintiff averred he was never told hard hats were available and was never cautioned that he should not work near the area where the trim and channel were being removed. He further testified Rinehart never issued a warning prior to the time the trim fell.
 {¶ 9} Inmate Daniel Holloway testified he was working with plaintiff to dismantle the temporary wall at the time plaintiff was injured. Holloway stated he was not wearing a hard hat on the job site because he did not think it was necessary to wear one. He did not see the trim strike plaintiff, nor did he hear Rinehart warn plaintiff. He became aware of the incident only after he observed plaintiff sitting in the hallway rubbing his head. He described the piece of trim that struck plaintiff as being three and one-half to four feet long, three inches wide, weighing one or two pounds. Holloway further testified the trim could not have fallen more than two or three feet. Holloway corroborated Rinehart's testimony that plaintiff went back to work after declining the suggestion that he go to the infirmary.
 {¶ 10} Inmate Raymond D. Hall testified he was working with his back toward plaintiff when he heard plaintiff utter an obscenity. Hall turned around to see that a section of the trim Rinehart was working to loosen had fallen and struck plaintiff on the head. Hall did not recall hearing Rinehart warn plaintiff prior to the time the trim fell. Hall described the trim as four to five feet long, weighing five to eight pounds. According to Hall, plaintiff resumed working after the incident.
 {¶ 11} Inmate Vaughn Aneshansel testified he was removing debris from the floor when he heard Rinehart twice warn plaintiff, who was standing a few feet away from Rinehart, that a section of the trim Rinehart was working on was coming loose and was about to fall. Aneshansel described the section of trim as being approximately two feet long, weighing approximately five pounds. He heard the metal trim hit the floor and turned to see plaintiff standing nearby, rubbing his head. According to Aneshansel, when Rinehart asked plaintiff if he wanted to go to the infirmary, plaintiff emphatically declined and continued working.
 {¶ 12} In a decision issued on November 24, 2003, the magistrate recommended judgment for defendant, concluding that plaintiff failed to demonstrate, by a preponderance of the evidence, that defendant was negligent in failing to provide him a hard hat to wear at the job site. In so concluding, the magistrate found: (1) plaintiff had three years of experience on the carpentry crew, working almost daily on construction projects which often resulted in minor injuries, (2) Rinehart was an experienced construction supervisor who determined hard hats were unnecessary for the project, (3) Holloway, an inmate crew member, agreed that hard hats were unnecessary, and (4) plaintiff had neither requested, nor was denied, the use of a hard hat. The magistrate further found plaintiff's testimony to be unreliable in several respects. Plaintiff filed objections to the magistrate's decision. On February 4, 2004, a judge of the Court of Claims overruled plaintiff's objections and adopted the magistrate's decision and recommendation.
 {¶ 13} Plaintiff's nine assignments of error reduce to three separate issues: (1) whether the trial court erred in failing to find that Ohio Adm. Code 4121:1-3-03(A)(4) required defendant to provide him a hard hat while performing his assigned duties, (2) whether the trial court's conclusion that defendant was not negligent is supported by the manifest weight of the evidence, and (3) whether the trial court erred in referring to plaintiff's "minor injury" in a liability only trial.
 {¶ 14} We first address plaintiff's contention that the trial court erred in failing to find that Ohio Adm. Code4121:1-3-03(A)(4) required defendant to provide him a hard hat while performing his assigned duties. The regulation under which plaintiff claims protection sets forth various duties imposed upon an employer in the context of an employer-employee relationship. However, it is well-established that ordinary prison labor performed by an inmate in a state correctional institution facility is not predicated upon an employer-employee relationship and thus does not fall within the scope of workerprotection statutes. Moore v. Ohio Dept. of Rehab. Corr. (1993), 89 Ohio App.3d 107, 111, 623 N.E. 2d 1214
jurisdictional motion overruled (1993), 67 Ohio St.3d 1506. See, also, Fondern v. Ohio Dept. of Rehab. Corr. (1977),51 Ohio App.2d 180, 367 N.E.2d 901 (R.C. Chapter 4113 inapplicable to injury sustained by inmate working in prison laundry); Watkinsv. Ohio Dept. of Rehab. Corr. (1998), 61 Ohio Misc.2d 295,298, 578 N.E.2d 896 (inmates working in state correctional institutions are not employees of the state of Ohio). Accordingly, the trial court correctly determined that defendant did not violate Ohio Adm. Code 4121:1-3-03(A)(4).
 {¶ 15} Although an inmate is not entitled to the protections set forth under Ohio Adm. Code 4121:1-3-03(A)(4), it is well-established that an inmate who is injured while working in a prison shop or industry may assert a cause of action for negligence. To establish a claim of negligence, the plaintiff must provide by a preponderance of the evidence that: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) such breach was the proximate cause of the plaintiff's injuries. Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, 697 N.E.2d 198; Strother v. Hutchison
(1981), 67 Ohio St.2d 282, 285, 423 N.E.2d 467.
 {¶ 16} In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm. Woods v. Ohio Dept. of Rehab. Corr. (1998),130 Ohio App.3d 742, 744-745, 721 N.E.2d 143 cause dismissed (1999), 85 Ohio St.3d 1414; McCoy v. Engle (1987),42 Ohio App.3d 204, 207-208, 537 N.E.2d 665. Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know. Woods, supra, at 745; Moore, supra, at 112. The extent of the state's duty will vary with the circumstances. Woods,
supra. Where an inmate also performs labor for the state, the state's duty must be defined in the context of those additional factors which characterize the particular work performed.McCoy, supra, at 208. The state, however, is not an insurer of inmate safety, and the special relationship between the state and the inmate does not expand or heighten the duty of ordinary reasonable care. Woods, supra. Applying these legal principles to the facts of this case, we conclude, contrary to plaintiff's second contention, that the magistrate's decision is not against the manifest weight of the evidence.
 {¶ 17} The appropriate standard of review is whether the trial court's decision is contrary to law. Macklin v. Ohio Dept.of Rehab. Corr., Franklin App. No. 01AP-293, 2002-Ohio-5569, ¶ 20. A civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. A reviewing court is obliged to give deference to the factual findings of the trial court. Zeigler v. Ohio Dept. of Rehab. Corr., Franklin App. No. 02AP-826, 2003-Ohio-3337, at ¶ 18, citing Seasons CoalCo v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. "The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures." Id.
 {¶ 18} Plaintiff's assertion that the trial court ignored evidence regarding the dimension and weight of the section of trim that struck plaintiff on the head is unsupported by the record. The trial court methodically recounted the testimony presented at trial and included in its recitation the opinions of Rinehart, Holloway and Hall as to the length and weight of the trim. Further, we note that the trial court made no conclusive finding as to either the length or the weight of the trim that struck plaintiff. However, to the extent plaintiff argues that the trial court erroneously found that the trim that struck him was only four feet long and weighed only five pounds, such finding is supported by Rinehart's testimony. Although there is other testimony suggesting that the section of trim may have been more than four feet long and weighed as much as eight pounds, we reiterate that credibility determinations are within the purview of the trier of fact. Zeigler, supra.
 {¶ 19} The manifest weight of the evidence does not support plaintiff's further assertion that he was not warned of the danger of falling trim. Ample competent credible evidence reveals that plaintiff was warned of such danger prior to being struck. Both Rinehart and Ansehansel testified that Rinehart twice warned plaintiff to move out of the area. Further, Rinehart testified that plaintiff would have avoided injury had he heeded these warnings.
 {¶ 20} Contrary to plaintiff's further assertion, the trial court's determination that defendant did not breach its duty of care to plaintiff in failing to require him to wear a hard hat while performing his assigned duties is not against the manifest weight of the evidence. Plaintiff argues that because Ohio Adm. Code 4121:1-3-03(A)(4) required defendant to provide hard hats to the inmates on the construction crew, Rinehart's and Holloway's opinions that hard hats were unnecessary were irrelevant, as was the fact that plaintiff failed to request a hard hat. We disagree.
 {¶ 21} As previously noted, an inmate working in a state correctional institution is not protected by worker-safety regulations; thus, Ohio Adm. Code 4121:1-3-03(A)(4) is inapplicable. Moore, Fondern, Watkins, supra. Further, the opinions of the crew supervisor and inmate members of the crew as to whether the nature of the work to be performed required the use of hard hats is clearly germane to a cause of action sounding in negligence. As noted, the state's duty of care must be defined in the context of factors which characterize the particular work performed. McCoy, supra.
 {¶ 22} Rinehart, a construction supervisor with six years experience, concluded that given both the relatively simple nature of the particular task to which his crew was assigned and the fact that all overhead work to be performed was within arm's reach, it was unnecessary that the crew wear hard hats. Holloway, an inmate crew member, also believed the task could be safely performed without wearing hard hats. In addition, plaintiff, an experienced construction crew member, did not request that he be provided a hard hat, a fact suggesting that he believed the assigned task could reasonably be performed without the risk of head injury. Accordingly, the trial court's finding that defendant was not negligent in failing to provide plaintiff a hard hart is not against the manifest weight of the evidence.
 {¶ 23} Finally, plaintiff contends the trial court erred in determining plaintiff suffered a "minor injury" when the nature and extent of plaintiff's damages was not at issue in the liability only trial. Contrary to plaintiff's assertion, the trial court's description of plaintiff's injury as "minor" is not tantamount to a damages determination. Here, the trial court characterized plaintiff's injury as "minor" only to underscore the fact that the injury was so inconsequential that it was reasonable for Rinehart not to provide hard hats for the work crew.
 {¶ 24} For the foregoing reasons, plaintiff's nine assignments of error are overruled, and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
Bowman and Brown, JJ., concur.