[Cite as *Davis v. Dept. of Rehab. & Corr.*, 2019-Ohio-1756.]

| | |
|---|---|
| RODERICK DAVIS | Case No. 2018-00043JD |
| Plaintiff | Magistrate Anderson M. Renick |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} At the outset of the proceedings, the parties presented a stipulation regarding the first cause of action in plaintiff's second amended complaint. Specifically, counsel for defendant admitted that defendant breached a duty owed to plaintiff as a result of a September 22, 2017 incident in which plaintiff was injured when two dogs lunged at him and caused him to fall.

{¶3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Richland Correctional Institution (RCI). The second cause of action in plaintiff's second amended complaint arises out of an incident in which plaintiff slipped and fell on an accumulation of snow and ice on a walkway at RCI.

{¶4} Plaintiff testified that he has been diagnosed with diabetes, congestive heart failure, high blood pressure, and swelling in his legs. As a result of his medical condition, he has been issued restrictions for both a bottom bunk and a lower range assignment.

{¶5} Plaintiff testified that on the morning of February 5, 2018, he used a rollator walker to travel from his housing unit to the institution infirmary to receive a prescribed injection. Plaintiff stated that he was one of the first inmates to leave his housing unit

that morning when he proceeded to the infirmary at approximately 6:35 a.m. Plaintiff described the walkway that led to the infirmary as a long incline which was slippery from frozen precipitation. Plaintiff identified a photograph of the area in question. (Plaintiff's Exhibit 2.) According to plaintiff, he encountered a "slick spot" when he walked near the library, which caused him to lose his balance and fall onto the asphalt pavement, injuring his back, leg, and head. Plaintiff related that the frozen precipitation that caused him to fall was not visible. Plaintiff testified that a corrections officer (CO) called for assistance and that he was transported to the infirmary by a motorized vehicle known as a "Red Baron."

{¶6} CO Mark Gray testified that he did not see plaintiff fall and he became aware of the incident when he noticed inmates pointing at plaintiff who was lying on the ground. CO Gray recalled that there was "a lot of movement" on the prison yard when he responded to the incident. According to CO Gray, he had no difficulty walking across the prison yard to assist plaintiff. CO Gray responded and assisted in placing plaintiff in the transport vehicle. As a result of the incident, CO Gray completed an incident report. (Defendant's Exhibit A.) CO Gray testified that he did not observe anything that would have caused the fall and that he would have noted any other slip and fall incidents he had been aware of in his report.

{¶7} Corrections Captain Gary Nusbaum testified that, on the day of the incident, he was assigned as the third shift captain, working from 9:30 p.m. to 5:30 a.m. Captain Nusbaum's responsibilities included making the decision to assign crews to work on snow and ice removal. Nusbaum testified that he monitored icing conditions both by making periodic rounds of the institution and by reports from other COs. Snow removal crews were available between 7:00 a.m. and 3:00 p.m. or when called in after normal hours. Nusbaum related that he did not have any independent recollection of the incident in question.

{¶8} Kevin Pierce testified that at the time in question he worked as a maintenance supervisor and that his responsibilities included snow and ice removal. Pierce corroborated Captain Nusbaum's testimony regarding the working hours for regular snow removal crews and he explained that each crew typically included two staff members and a varying number of inmate assistants. According to Pierce, defendant's snow removal practice included plowing with tractors or all-terrain vehicles, followed by applying salt that was effective at temperatures above five degrees Fahrenheit. Pierce identified defendant's written snow removal policy that was in effect at the time of the accident. (Defendant's Exhibit B.) Pierce testified that crews performed a "full-scale treatment" on February 4, 2018 and that the last maintenance staff left RCI by approximately 1:30 a.m. on February 5, 2018.

{¶9} Ahab Cates, an RCI maintenance repair worker, testified that he performed snow removal throughout the day and evening on February 4, 2018 and that he left work at 1:00 a.m. the next morning. Cates explained that snow removal continued until snow stopped falling and that thereafter, salt was applied to all surfaces, including all institution walkways.

{¶10} Plaintiff presented the testimony of three inmates who, like himself, had performed duties as Red Cross workers, which included assisting other inmates who became injured. Inmate David Porter testified that he was walking "right behind" plaintiff when he observed plaintiff slip and fall. Porter testified that there was visible ice on the walkway at the time of the incident. Porter stated that he almost fell on the ice and that he observed a CO who came to assist plaintiff almost fall. When he arrived at the scene of the accident, plaintiff was on the ground and he informed Porter that he had injured his back.

{¶11} Inmate Paul Showalter testified that he was assigned to the Red Cross emergency response team when he learned that plaintiff was injured. Showalter stated that he observed both black and "regular" ice on the walkway and he described the

lighting near the incident as poor. Inmate William Bewley testified that he was also assigned to the Red Cross team and that he was in the chow hall when he was called to assist plaintiff before the Red Baron vehicle arrived. According to Bewley, the area where plaintiff fell was dark and icy. Bewley stated that the walkway was concealed by snow and that he did not observe any salt.

{¶12} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused him injury. *Armstrong v. Best Buy* Co., *Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77 (1984).

{¶13} In general, a possessor of land has no duty to protect an invitee from natural accumulations of ice and snow on his property. *Brinkman v. Ross,* 68 Ohio St.3d 82, 83 (1993). Implicit in this rule is the rationale that such accumulations are so open and obvious that invitees can be expected to protect themselves from the danger they present. *Dean v. Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 97API12-1614, 1998 Ohio App. LEXIS 4451 (Sept. 24, 1998). Essentially, "an invitee who chooses to traverse a natural accumulation of ice or snow is generally presumed to have assumed the risk of his or her action to the degree that no duty exists on the premises owner." *Id.* However, inmates incarcerated in a state penal institution are not afforded the status of a traditional "invitee" and are not always free, as an invitee would be, to refrain from traversing the accumulation of ice and snow and so they cannot be said to assume the risk of doing so. *Id; see also May v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 00AP-1327, 2001 Ohio App. LEXIS 2859 (recognizing that an inmate who slipped and fell on a natural accumulation of ice or snow had no opportunity to refrain from using the assigned path); *Gerald Fields v. Ohio Dept. of Rehab. & Corr,* Ct. of Cl. No. 2010-12281 (June 7, 2012). Rather, in the context of the custodial relationship between the state and its inmates, the state has a duty to exercise reasonable care to

prevent prisoners in its custody from being injured by dangerous conditions about which the state knows or should know. *Moore v. Ohio Dept. of Rehab. & Corr.,* 89 Ohio App.3d 107, 112 (10th Dist.1993); McCoy *v. Engle,* 42 Ohio App.3d 204, 207-208 (10th Dist.1987); *Dean, supra.*

{¶14} With regard to notice, "[n]otice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Jenkins v. Ohio Dept. of Rehab & Corr.,* 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 12; *Watson v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14. "To support an inference of constructive notice, a plaintiff may submit evidence that the condition existed for such a length of time that the owner or its agent's failure to warn against it or remove it resulted from their failure to exercise ordinary care." *Jenkins* at ¶ 12.

{¶15} Upon review of the evidence, the court finds that on February 5, 2018, plaintiff was walking to the institution infirmary when he slipped on an accumulation of ice and fell on the asphalt walkway. The evidence established that it snowed on February 4, 2018 and that temperatures remained below freezing during the early morning hours of February 5, 2018. (Plaintiff's Exhibit 1.) There is no question that defendant owed plaintiff a duty of care with respect to the snow and ice that fell on the walkway.

{¶16} Regarding the timing of the snowfall, the weather data submitted by plaintiff shows that no precipitation was reported in the area in question on the morning of February 5, 2018. Therefore, the court finds that, at the time of the incident, any

accumulated ice that existed on the walkway remained from precipitation that fell on February 4, 2018. The court finds that defendant's maintenance crews continued to plow the walkways until the snow ended during the evening of February 4, 2018. Both Pierce and Cates testified credibly that salt was applied to all walkways after snow was removed. According to Cates, salt was applied to "everything," including all walkways before "the job was complete" when he left work at approximately 1:00 a.m. on February 5, 2018.

{¶17} Although Bewley testified that, earlier in the morning, another inmate fell close to the area where plaintiff fell, his testimony was inconsistent with the testimony of other witnesses who were not aware of anyone other than plaintiff falling. Bewley also testified that he was in the chow hall when plaintiff fell, soon after inmates were first allowed to leave the dormitory that morning. The court finds that Bewley's testimony that he saw other inmates fall prior to the incident was not credible. The testimony was also inconsistent regarding whether there was visible ice or snow on the walkway.

{¶18} The court finds that the testimony of CO Gray was more credible that that of plaintiff and the other inmate witnesses regarding the condition of the walkway. As noted above, CO Gray testified that he did not observe anything on the walkway in question that would have caused plaintiff to fall and that he had no difficulty walking to assist plaintiff. Defendant's employees testified credibly that they plowed all walkways after the snowfall had ended before treating all walkways with salt.

{¶19} Based upon the foregoing, the court finds that defendant's maintenance staff took reasonable steps to protect plaintiff both by removing snow and ice and by properly treating the walkways with salt. Accordingly, the court finds that plaintiff failed to prove his slip and fall claim by a preponderance of the evidence and judgment is recommended in favor of defendant on that claim. Judgment is recommended in favor of plaintiff on his negligence claim involving the fall that was caused by a dog.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ANDERSON RENICK
Magistrate

**Filed March 25, 2019**
**Sent to S.C. Reporter 5/8/19**