[Cite as *Jackson v. Dept. of Rehab. & Corr.*, 2019-Ohio-4776.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rufus Jackson, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 19AP-131 |
| v. | : | (Ct. of Cl. No. 2015-00136JD) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on November 21, 2019

**On brief:** *Swope and Swope* and *Richard F. Swope,* for appellant. **Argued:** *Richard F. Swope.*

**On brief:** *Dave Yost,* Attorney General, and *Lee Ann Rabe,* for appellee. **Argued:** *Lee Ann Rabe.*

APPEAL from the Court of Claims of Ohio

NELSON, J.

{¶ 1} Rufus Jackson, an inmate at the Marion Correctional Institution, was injured when a piece of HVAC ductwork fell from a low flatbed cart and struck him as he sat in the prison dayroom. September 7, 2018 Decision of the Magistrate at 1, 2, 4. He sued the Department of Rehabilitation and Correction for negligence, and the case was tried to a Court of Claims magistrate on the issue of liability. The magistrate found that he failed to prove that the department had breached any duty of care to him; she recommended judgment for the defendant department. *Id.* at 9. After Mr. Jackson lodged certain objections to that recommendation, the trial judge conducted an independent assessment of those matters, reviewing the implicated facts and conclusions afresh. February 4, 2019 Judgment Entry at 2. Finding that the magistrate had properly determined the facts and

applied the law, the trial court adopted the magistrate's decision and entered judgment for the department. *Id.* at 7. Mr. Jackson now appeals.

{¶ 2} Mr. Jackson's appeal is rooted in his view that "there was a high degree of probability an accident would occur," Appellant's Brief at 11, and that in light of that fact, the department breached " 'a common-law duty of reasonable care and protection' " to guard him against " 'unreasonable risks,' " *id.* at 14 ("Conclusion," citing *McCoy v. Engle*, 42 Ohio App.3d 204 (10th Dist.1987)). But Mr. Jackson did not prove at trial that the department knew or should have known about the risk of such an accident (let alone that the accident was probable to a "high degree" or otherwise, or that a known risk was "unreasonable"). And although the magistrate found that Mr. Jackson had failed to establish that the department had "notice" of the risk, he "did not object to this aspect of the magistrate's decision" and the trial court properly found that "the evidence supports the magistrate's finding." Magistrate's Decision at 9; Judgment Entry at 7; *compare* October 25, 2018 Objections at 1 (not contesting that finding by the magistrate). So Mr. Jackson's appeal never really gets off the ground.

{¶ 3} The facts to the extent they can be ascertained from the testimony at trial are reasonably straightforward. It is not contested that an enterprise called The K Company had been doing HVAC work at the prison for roughly one to two weeks at the time of the accident. Magistrate's Decision at 1, 2, 5. K Company employee Donald Heberlein testified that prison inmates would load ductwork onto flatbed carts that his fellow K Company employee Steve Fox testified were only about five to eight inches off the ground. *Id.* at 3, 2; Heberlein Depo. at 5; Tr. at 31. Each piece of ductwork was 56.5 inches high, measured 8 to 10 inches across, and weighed approximately 10 to 20 pounds, Mr. Fox said; they were loaded onto the carts vertically and were considered stable because they had a 1.75 inch flange at each end. Magistrate's Decision at 2; March 13, 2018 Liability Trial Tr. at 14, 26, 27, 20 (Fox testimony that "it's a pretty good way of hauling TDC * * *. It doesn't move").

{¶ 4} As the magistrate summarized, "Heberlein testified [through deposition] that the material did not need to be secured on a cart because it was square, flat material that typically rode on a cart very well. Heberlein stated that loading the ductwork on carts did not require instruction because the material was 'just metal squares' that would ride on a cart. When asked why the material was not secured on the cart, he stated that, 'Never in

my life of 25 years of installing ductwork have we ever secured any material to a cart, not once in my career.' " Magistrate's Decision at 3. As the trial court added, Mr. Heberlein "further testified that he's 'never' had ductwork fall during transport and hit anyone." Judgment Entry at 3; Heberlein Depo. at 20.

{¶ 5} "Heberlein described the floor of the dayroom as being smooth concrete and stated that he did not see any defects in the floor on the day of the accident." Magistrate's Decision at 3-4; Heberlein Depo. at 13. On somewhat mixed testimony that is not challenged here, the magistrate found that "an inmate worker was moving the cart through the dayroom" when the ductwork fell. *Id.* at 8. That piece of falling ductwork hit the seated Mr. Jackson on his head, shoulders, and back, causing him injury. *Id.* at 1; Trial Tr. at 43 (Jackson testimony).

{¶ 6} The prison guard who served as an escort to K Company employees and who viewed his role as keeping the contractors safe in that environment "testified that he was behind the cart when the ductwork fell, that the incident occurred suddenly without warning, and that prior to plaintiff's incident, he had not witnessed any HVAC equipment fall from a cart." Magistrate's Decision at 4; Trial Tr. at 51-52, 55, 58, 60, 66 (Heberlein testimony; ductwork fell within a "millisecond").

{¶ 7} Neither Mr. Jackson, the three other inmate witnesses, nor anyone else testified to having seen any ductwork fall off a cart in the days leading up to the accident. One inmate, uniquely, said that some two to three days earlier, he had heard a heavy metal object hit the floor in a way that suggested something had fallen off the cart, Magistrate's Decision at 5; Rembert Depo. at 13, 16-17, but the magistrate found that deposition testimony "neither credible nor persuasive," *id.* at 9. That witness "could not recall what fell off a cart, and he did not personally witness the action that resulted in the loud noise that he stated that he heard." *Id.* (The magistrate also did not credit that inmate's initial testimony that the cart in question had been pulled by "company employees" rather than by another inmate. *Id.* at 5.)

{¶ 8} Mr. Jackson asserted in his complaint that "the negligence of The K Company, Inc., acting as the agent and employee of the Defendant, Ohio Department of Rehabilitation and Correction, who was in fact under the direct control and supervision of the Ohio Department of Rehabilitation and Correction, acting within the scope of their

employment, caused severe injury to [his] head, neck, back, and body." Complaint at ¶ 5. His theory has evolved, however, and he now does not dispute the magistrate's determination that The K Company was an independent contractor on the HVAC job. *Compare* Magistrate's Decision at 8 ("The K Company was an independent contractor of defendant" and "defendant did not retain control of, or the right to control, the mode and manner of doing the HVAC work") *with* Appellant's Reply Brief at 1 ("The K Company was not an agent or employee, but an independent contractor").

{¶ 9} The magistrate concluded that the department was "not liable for any alleged failure of ordinary care of [independent contractor] The K Company employees, or the inmate workers who assisted The K Company employees in the HVAC project at MCI." Magistrate's Decision at 8. She also found that the department "did not breach a duty of reasonable care and protection from a known risk to plaintiff." *Id.* The department had no notice of "material falling off a cart prior to plaintiff's incident," she wrote, and Mr. Jackson did not prove "by a preponderance of the evidence, that defendant breached any duty of care it owed to him." *Id.* at 9.

{¶ 10} Overruling Mr. Jackson's objections to the magistrate's decision, the trial court stated that "[t]he evidence at trial established that neither defendant nor any of its employees directed the K Company as to how to perform any aspect of its work." Judgment Entry at 4. The department "is not liable for the negligence of independent contractors or their employees over whom it has no control," the court continued. *Id.* at 5. And because Mr. Jackson "failed to establish that [the department] had exclusive control of the falling ductwork," principles of res ipsa loquitor were unavailing. *Id.* at 6. The trial court concluded that "negligence, if any, in loading or transporting materials or in supervising the same cannot be imputed to" the department. *Id.* at 7. And the trial court underscored: "The magistrate also found that defendant lacked notice that material had previously fallen from the cart and, therefore, did not breach any duty of care toward defendant. Plaintiff did not object to this aspect of the magistrate's decision and the court finds the evidence supports the magistrate's finding." *Id.*

{¶ 11} Mr. Jackson presents us with what he lists as five assignments of error but briefs as four (with numbers four and five understandably combined):

[1.] The trial court and the magistrate erred in finding that The K Company employees were responsible for directing the inmate worker on how to load and move the cart.

[2.] The trial court and magistrate erred in failing to find that the defendant–appellee's employees are responsible to exercise reasonable care to protect the health, safety and welfare of inmates in their care.

[3.] The trial court and magistrate erred in [] not applying the doctrine of res ipsa to the established facts in this case.

[4.] The decisions of the magistrate and trial court are against the manifest weight of the evidence and are contrary to law.

[5.] The decision of the magistrate is against the manifest weight of the evidence and contrary to law.

Appellant's Brief at iii (capitalizations adjusted); *see also id.* at 8, 9, 12.

{¶ 12} In general, an appellate court "applies an abuse of discretion standard when reviewing a trial court's adoption of a magistrate's decision." *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 6. "An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Id.,* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Thus, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily or unconscionably." *Id.* (citation omitted). Moreover, a reviewing court "is obliged to give deference to the factual findings of the trial court," *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 17, citing *Zeigler v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-826, 2003-Ohio-3337, ¶ 18, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), and "a civil judgment 'supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence,' " *McElfresh* at ¶ 17, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus; *see also, e.g., Fraley v. Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-731, 2019-Ohio-2804, ¶ 45 (citing *C.E. Morris Co.*).

{¶ 13} As a preliminary matter, we note that The K Company is not a defendant here, and the department would not be responsible for any negligence on that company's part

because Mr. Jackson acknowledges that The K Company was not a department "agent or employee, but an independent contractor." *See* Reply Brief at 1. "An employer is generally not liable for the negligent acts of an independent contractor that it has hired." *Wright v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-153, 2014-Ohio-4359, ¶ 8, citing *Pusey v. Bator*, 94 Ohio St.3d 275, 278 (2002) (and adding at ¶ 16 that "the doctrine of respondeat superior does not apply" with regard to alleged negligence by the independent contractor); *see also, e.g., Hughes v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2004-087120, 2005-Ohio-4462, ¶ 6 (generally "one who engages an independent contractor is not liable for the negligent acts of the contractor or its employees"). The magistrate made the same point, *see* Magistrate's Decision at 7, citing *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438 (1994), as did the trial judge on review, *see* Judgment Entry at 7, and Mr. Jackson does not argue here that the department somehow is liable for any negligence of The K Company.

{¶ 14} Against that backdrop, we start with Mr. Jackson's second assignment of error. It would not be accurate to suggest that either the magistrate or the trial court failed to recognize the department's obligation to inmates who are in its custody. *See* Magistrate's Decision at 6; Judgment Entry at 5. The question is whether Mr. Jackson established at trial that the department breached that duty and thereby caused him harm. *Compare, e.g., Watson*, 2012-Ohio-1017, at ¶ 7 ("To prevail on his negligence claim, Watson must establish that (1) ODRC owed him a duty, (2) ODRC breached that duty, and (3) ODRC's breach proximately caused his injuries"). The trial court and the magistrate's decision it adopted correctly found that Mr. Jackson proved no such breach.

{¶ 15} "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." *McElfresh*, 2004-Ohio-5545, at ¶ 16, citing *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 744-45 (10th Dist.1998); *McCoy*, 42 Ohio App.3d at 207-08. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh* at ¶ 16, citing *Woods*, 130 Ohio App.3d at 745; *Moore v. Ohio Dept. of Rehab. & Corr.*, 89 Ohio App.3d 107, 111 (10th Dist. 1993). "The

state, however, is not an insurer of inmate safety * * * *" *McElfresh* at ¶ 16, citing *Woods. See also, e.g., Jenkins v. Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 8 (citations omitted) ("The state is not an insurer of the safety of its prisoners, but once it becomes aware of a dangerous condition in the prison, it is required to take the reasonable steps necessary to avoid injury to prisoners").

{¶ 16} The magistrate's decision as adopted by the trial court found that the department "did not breach a duty of reasonable care and protection from a known risk to plaintiff." Magistrate's Decision at 8; *see also id.* at 9 ("plaintiff has failed to prove, by a preponderance of the evidence, that defendant breached any duty of care it owed him"). We cannot conclude that the trial court abused its discretion in reaching that determination. The state owes its prisoners "a duty of reasonable care and protection from unreasonable risks," as the *McCoy* decision cited by Mr. Jackson at page 14 of his opening brief observes, 42 Ohio App.3d at 208, but Mr. Jackson did not show that his case involved known risks anything like "those unreasonable risks of harm which attend the collaring and restraint of bulls undergoing castration" and against which the state in its prison livestock farming pursuits might have protected there, *see id.* at 209.

{¶ 17} Nor do the facts as reasonably found by the trial court approach the apparent and unreasonable risks assertedly involved, for example, in permitting a prisoner to "us[e] the slicer without the pivoting guard," as Mr. Jackson quotes from one case at page 6 of his Reply Brief, or to use a meat slicer without the safety shield, as in *Morgan v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2010-05986, 2011-Ohio-7029, cited by Mr. Jackson at page 7 of his Reply Brief, or "to continue making cuts with the miter saw in an unsafe manner" that the supervisor "should have noticed," as in *Young v. Ohio Dept. of Rehab. & Corr.,* Ct. of Cl. No. 2015-00867, 2017-Ohio-8097, cited by Mr. Jackson at page 10 of his opening brief and pages 5-6 of his reply, or "pulling a vent [of unknown weight] out of a wall above one's head, while standing on a [12-foot] stepladder," as in *Schuetzman v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2016-0089OJD, 2018-Ohio-4821, ¶ 9, as cited in Mr. Jackson's opening brief at 11. Rather, here as in *Moore v. Ohio Dept. of Rehab. & Corr.*, 89 Ohio App.3d 107, Mr. Jackson did not prove that the work at issue (involving the wheeling into the dayroom of the low-lying flatbed cart as loaded with ductwork) should have been

understood to be "by its nature hazardous to others" as "entail[ing] an inherent element of danger to others in the vicinity." *Id.* at 112 (citation omitted).

{¶ 18} On this record, the sort of accident that occurred here seems unprecedented and was not shown to have involved inherent danger that was apparent at the time. As the trial court recited: "Mr. Heberlein testified * * * that '[n]ever in my * * * 25 years of installing ductwork have we ever secured any material to a cart, not once in my career.' He further testified that he's 'never' had ductwork fall during transport and hit anyone and that 'square flat material does not need [to be] secured to carts, it rides on a cart very well.' " Judgment Entry at 3; *see* Heberlein Depo. at 11. Further, and as the trial court also emphasized, Mr. Jackson has not taken issue with the magistrate's conclusion after having heard the evidence at trial that the department "lacked notice that material had previously fallen from the cart * * *." Judgment Entry at 7. *Compare* Civ.R. 53(D)(3)(b)(iv); *Triplett v. Warren Corr. Inst.*, 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 15 (failure to object to a magistrate's finding waives all but plain error). The magistrate's conclusion in this regard, as seconded by the trial court's own view that "the evidence supports the magistrate's finding"), *see* Judgment Entry at 7, is not plain error and is not assigned or even argued as error by Mr. Jackson.

{¶ 19} Mr. Jackson cites nothing in the record for his contention that "there was a high degree of probability that an accident would occur." Appellant's Brief at 11. His unadorned suggestion that the department should have known the general conduct going on around him to pose " 'unreasonable risks' " or to be sufficiently " 'dangerous' " to warrant protective measures, *id.* at 10 quoting *Young* citing other cases, does not make that so. To the extent that Mr. Jackson's second assignment of error posits that the department breached its duty to him—to the extent, that is, that the assignment contends that the trial court got the negligence issue wrong—we overrule it.

{¶ 20} Mr. Jackson's argument that the department was negligent is not enhanced by his third assignment of error, invoking the doctrine of res ipsa loquitur. "*Res ipsa loquitur* is a rule of evidence which permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to [the] plaintiff." *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66 (1970). The accident would not have happened without somebody having been negligent, Mr. Jackson implies: "The

[unspecified] evidence is clear [that] if loaded properly or transported properly, the ductwork would not have fallen on Inmate Rufus Jackson."  Reply Brief at 8; *see also* Appellant's Brief at 17 (suggesting possibility that the materials "were negligently pulled through the dayroom"). This argument does not seem to go to negligence by department employees, and has precious little to do with whether the department was on notice of unreasonably dangerous risks against which it had a duty to guard.

{¶ 21} As already noted, the department would not be liable for any alleged negligence on the part of its independent contractor or that company's employees.  But neither would any potential negligence on the part of inmate workers (who Mr. Jackson and the magistrate agree loaded and pulled the cart, *see* Appellant's Brief at 7; Magistrate's Decision at 8) be attributable to the department.  *Moore* is directly on point.  There, we labeled as "fundamentally flawed" the argument that the department "should be subject to vicarious liability for the clear carelessness of [an] inmate * * *, who plaintiff views as defendant's actual or constructive employee."  89 Ohio App.3d at 111 (adding that "[t]raditionally, ordinary prison labor performed at a state correctional facility has not been deemed to be predicated on an employer-employee relationship").  *See also, e.g., McElfresh*, 2004-Ohio-5545 at ¶ 14 (citing *Moore* and other cases for the point that "ordinary prison labor performed by an inmate in a state correctional institution facility is not predicated upon an employer-employee relationship"); *Bell v. Dept. of Rehab. & Corr.*, 10th Dist. No. 91AP-1375, 1992 Ohio App. Lexis 2535, *2-3 (refusing "to extend the doctrine of *respondeat superior* to inmates who are on institutional grounds, even those inmates who perform job-like functions at the state's prisons," adding at *4 that department's duties do "not extend to the point of watching all inmates at all times or insuring against all imaginable injuries").

{¶ 22} In short, therefore, the very most that Mr. Jackson could have sought to achieve from a res ipsa inference was that an inmate worker somehow was negligent in the handling of the cart, but such a finding in and of itself (and absent a finding that the department should have been aware of the danger, a finding to which the res ipsa principle does not relate) would not translate into liability for the department.  Given that the negligence of inmate workers generally is not attributable to the department, the trial court also was correct in concluding that res ipsa did not apply because "plaintiff failed to

establish that defendant had exclusive control of the falling ductwork." Judgment Entry at 6. We overrule Mr. Jackson's third assignment of error.

{¶ 23} Having overruled Mr. Jackson's second and third assignments of error, we overrule his first assignment as moot. Mr. Jackson failed to establish liability on the part of the department, whether or not "The K Company employees were responsible for directing the inmate worker on how to load and move the cart" (as Mr. Jackson argues the trial court erred in finding). *See* Appellant's Brief at 8.

{¶ 24} We also overrule Mr. Jackson's fourth and fifth assignments of error, which he puts forth as based on a manifest weight of the evidence argument. Strikingly for a weight of the evidence argument, Mr. Jackson points to precisely no evidence in support of his assertion that it was "certain there was an unreasonable risk that would result in an accident." Appellant's Brief at 14. And in his Reply Brief, at this assignment he falls back to the res ipsa argument that we already have addressed; tellingly, he incorrectly conflates the department with individual inmates (submitting that "Defendant-Appellee, by oral agreement, loaded and delivered the ductwork to the site"), Reply Brief at 8, before reformulating the res ipsa contention by stating that "[t]he only evidence the Appellee provided that explains the occurrence is that when properly loaded and secured, there were no accidents," *id.* at 9. Again, this "fundamentally flawed" argument does not withstand our well established precedents. We overrule Mr. Jackson's fourth and fifth assignments of error.

{¶ 25} Having overruled all assignments of error, we affirm the judgment issued by the Court of Claims of Ohio in favor of the defendant Department of Rehabilitation and Correction.

*Judgment affirmed.*

KLATT, P.J. and LUPER SCHUSTER, J., concur.

_____